Moncure, P.,
delivered the opinion of the court.
In March, April, May and July 1874, and January 1875, many houses on the land of Francis Gr. Ruffin, in the county of Chesterfield, were, at different times, burned or set fire to, generally in the night time, by some person then unknown; and it being afterwards discovered, or supposed to be discovered, that a colored boy named Hillary Page, living with his mother on the said land, was the author of all these fires, he was accordingly charged therewith and arrested therefor, and indictments, were, at different times, found and tried against him for some of these offences, in the circuit court of said county; on three of which indictments he was, at different times, convicted and condemned to death. The first conviction took place in February 1875, and was on an indictment containing three counts, charging the offence in different form’s. In the first count, the house was described as “a certain dwelling house of one Francis Gr. Ruffin.” In the ■second, it was described as a certain dwelling house of “Phillip Epps” and four other persons therein named. And in the third, it was described as a certain other house called a barn and stable of one F. GL Ruffin, *957 “ the same being an outhouse, not adjoining the dwelling house nor under the same roof, but some persons usually lodging therein at night, to-wit: Phillip Epps,” and four other persons therein named, as aforesaid. The prisoner was found guilty under the third count, the jury saying nothing in their verdict about the first or second counts. And sentence of death was pronounced against him on that conviction. This court awarded a writ of error to the judgment; and upon argument and consideration of the case, being of opinion that the finding by the jury of a verdict of “guilty as charged in the third count of the indictment,” was, in effect, a finding of not guilty, as charged in the first and second counts of the indictment, on which two counts the prisoner was therefore entitled to a judgment of acquittal; and being further of opinion that he was not charged in the third count with any offence punishable with death; but at most only with an offence under the fifth section of chapter 188 of the Code, wjiich section concerns the burning of “ any barn, stable,” &c., and makes the offences therein mentioned punishable by confinement in the penitentiary; it was considered that the said judgment was erroneous, and should be reversed and annulled. And this court proceeding to enter such judgment as the said circuit court ought to have entered, it was further considered that the prisoner should be acquitted of the charges contained in the first and second counts of the indictment. And it was ordered that the verdict of the'jury against him on the third count should be set aside, and the cause remanded to the said circuit court for a new trial to be had therein on the said third count, for the offence of feloniously and maliciously burning a barn and stable, as therein charged and as. described in the said fifth section of chapter 188 of th& *958 Code. But it was declared in the judgment of this court, that it would be competent for the court below, if deemed best to do so, to have a nolle prosequi entered as to the said third count, and to proceed to the trial of the prisoner on one or more of the other indictments for felony which appear to have been found against him, in the same court and at the same time with the indictment on which he had been tried as aforesaid, or any other indictment which might have been, or might be found against him for felony in the same court. Accordingly it appears that after the said cause was remanded to the circuit court as aforesaid, it was not further prosecuted therein, but the prisoner was tried, convicted and sentenced to death on each of two other indictments found against him in the same court on the 12th day of May 1875, in each of which he was charged with a like offence to that charged in the first count of the indictment on the third count of which he had previously been convicted as aforesaid; the said offence being described in all of the said indictments as the felonious and malicious burning of a certain dwelling house of one Francis G. Buffin, in the said county, in the night, and being charged in one of the said two indictments last found, which one was marked by the clerk when presented Ho. 5, as having been committed on the 26th day of April 1874, about the hour of one o’clock in the night of that day, and in the other of the said two indictments last found, which was marked by the clerk when presented Ho. 7, as having been committed on the 31st day of March 1874, about the hour of three o’clock in the night of that day. It appears that the indictment on which the prisoner had previously been convicted as aforesaid was marked Hoi, and in it the offence is ■charged as having been committed on the 29th day of *959 July, about tbe hour of two o’clock in the nigbt of that day. The prisoner was convicted on one of the said two indictments last found, to-wit: the one marked Ho. 5, on the 21st day of May 1875; and on the other, to-wit: the one marked Ho. 7, on the 1st day of June 1875; and he was sentenced to death in each case on the 2nd day of June 1875. To each of the judgments in these two cases a writ of error was awarded by this court.
A great many errors were assigned in the petition for a writ of error in each ease. The two cases were argued together, but we will consider them'separately as a decision of one of them may render it unnecessary to decide or consider the other. We will, therefore, proceed now to consider the case in which the indictment is marked Ho. 7.
All, or nearly all, of the questions arising in this case are presented by the bills of exceptions which were taken during the progress of the trial, and which are fifteen in number, including Ho. 2, which is not in the record and was not filed, as appears by a note of the clerk of the court below, at the foot of the record. We will consider and dispose of these questions in the order in which they are presented by the bills of exceptions; some of which will require very brief notice, and seem not to be relied on, and are not noticed in the assignment of errors, unless it be under the general head at the end of the petition, of “numerous other errors which are apparent in the record.”
1. Bill of exceptions Ho. 1 was taken to the ruling of the court in refusing the petition of the prisoner to grant him a mandamus nisi to the justice of the peace of the county by whom the prisoner was examined and remanded to answer for the felony for which *960 he was indicted, to appear before the court forthwith and show cause why a peremptory mandamus should not issue, commanding him to remand the said Hillary Page to the next term of the circuit court to answer for a felony for which he was indicted and arrested, instead of remanding him to the present term of the said court.
The question, no doubt, intended to be presented by this bill of exceptions was, whether a person remanded by an examining justice for trial for felony in the circuit court, could be arraigned and tried at a term of the court then in session, or only at a term of the court commencing after such examination. Conceding, for the purposes of this case, that the question was presented in a proper way, we are of opinion that it was properly solved by the court below, and that a person remanded for trial as aforesaid could be tried at any time after he was so remanded, even though at a term of the court which was in session at the time of his examination before a justice. The Code, it is true, provides that the commitment for trial, &c., “shall be in the next term of the circuit court for such county;” but that does not prevent a trial from being had at an existing term of the court, if one be then in existence. The object of the law is to have a speedy trial of a felony, and it therefore provides that the accused shall, unless good cause be shown for a continuance, be arraigned and tried at the first term of the court to which he is remanded or sent on for trial. Code, ch. 202, §§ 1 and 2. It might be very inconvenient and injurious, as well to the accused as to the commonwealth, to delay a trial necessarily to a future term of the circuit court, when there was one in existence at which it might just as well be had.
*961 2. Bill of exceptions No. 2 is not in the record, as before stated.
3. Bill of exceptions No. 3 states that the prisoner tendered to the court his plea of autrefois acquit, and sets out the plea, in which the arraignment, trial, and judgment had on indictment marked No. 1, as aforesaid, are relied on as an acquittal of the offence charged in the indictment in this case, marked No. 7, as aforesaid. To which plea the attorney for the commonwealth filed his replication, which is also set out in the bill; the said replication being, “that the of-fence charged in the indictment for which he is now arraigned, is another and distinct offence from that for which the said Hillary Page was tried and acquitted, as stated in said plea.” To this replication the prisoner, by his counsel demurred generally; and the court overruling his demurrer, the prisoner asked leave to join issue on the replication; which leave the court refused to grant, unless he would withdraw his demurrer to the replication; but offered to permit him to join issue on the replication if he would withdraw his demurrer thereto; which he refused to do; whereupon the court refused again his motion to join issue. And to this opinion and ruling of the court the prisoner excepted.
The court is of opinion that there is no error in the said opinion and ruling of the court below. The prisoner had no right to demur and rejoin to the same replication at the same time. He had his election to do either. He elected to demur; when his demurrer was decided against him, all he could then ask was to withdraw his demurrer and rejoin, and this the court offered to permit him to do; but he refused. He has therefore no just cause of complaint in this respect. He in his that “the demurrer *962 overruled by the court, the judgment should have been respondeat ouster.” He did answer over, by pleading not guilty, after his special plea of - autrefois acquit was disposed of. The right of respondeat ouster does not authorize a party whose demurrer to a replication has been decided against him to put in a rejoinder without withdrawing his demurrer. That would be a case of palpable duplicity; and would be the same thing as if he had offered to demur and rejoin at the same time to the replication. He may plead double in the first step in-a line of pleading. For example, he may plead autrefois acquit and not guilty. But he cannot plead double in any subsequent step in that line.
But in this case there was a second plea of autrefois acquit, founded on the same ground of acquittal, in the line of which pleading the prisoner rejoined, instead-of demurring to the replication; and thus had all the benefit he could have derived from being allowed to rejoin without withdrawing his demurrer to the first replication. In no view, therefore, can he have been injured by the action of the court below in this respect.
The first assignment of error may here properly be noticed. For though it does not present the same question presented by the third bill of exceptions, it is founded on what is set forth in that bill. That assignment is, that the court erred in overruling the demurrer to the replication to the plea of autrefois acquit tendered by the prisoner. That plea was clearly demurrable in not showing by the record an acquittal of any offence, but on the contrary a conviction. The prisoner, however, was not injured by the action of the court in this respect, even if it had been erroneous, for he put in a second plea of former acquittal, under *963 which he would have had the full benefit of his former •acquittal if it had in fact been for the same offence.
4. The third assignment of error is founded on bill of exceptions No. 4, and is that the court erred in refusing to reject the replication to the second plea of autrefois acquit, on the ground that it was not responsive to every part of the plea.
The plea and replication are set out in the bill of exceptions, and are in substance as follows:
The prisoner for plea says, that he has been heretofore, to wit: in the circuit court, &c.,in February 1875 indicted, for that he, on the 29th day of July, in the year 1874, about the hour of 2 o’clock in the night of that- day, in the county aforesaid, a certain dwelling house of one Francis G. Ruffin, there situate, feloniously and maliciously did burn against the peace, &c., as will be seen from the first count of an indictment, herewith filed, and prayed to be taken as a part of this plea; that on this indictment he was, at the said term, arraigned and tried for the said offence by a jury of his country, and by said jury acquitted of said charge, as may be seen from the record and judgment of said court, entered at its February term 1875. And the said Hillary Page further says, that the said offence of which he was thus acquitted, is the same •offence of which he is now indicted, and that he is the same Hillary Page mentioned in the said record and judgment, and that the evidence necessary to convict him on the present indictment would have convicted him if properly introduced on the previous trial and indictment when he was by the jury acquitted; and this he is ready to verify. Wherefore he prays, &c.
To which plea the attorney for the commonwealth •filed his replication in substance as follows: that by reason of anything in the said last plea alleged, the *964 commonwealth ought not to be precluded, &c., because the said attorney says, that while admitting that the prisoner is the same Hillary Page who was tried, as is alleged in said plea, &c., there is no such record in the said court referred to in the said plea of the said acquittal in due manner of law of the said Hillary Page, of and from the same identical felony and offence charged in the said indictment upon which he, the said Page, is now arraigned, as is by the said Page in his said plea in that behalf alleged; and this the said attorney for the commonwealth prays may be enquired of by the country.
This replication the prisoner moved the court to reject, as not being responsive to the plea; but the court overruled the motion; and to this opinion and ruling of the court the prisoner excepted.
We think there is no error in this opinion and ruling of the court. The replication is responsive to the plea. It traverses a vitally important allegation of the plea, that the offences charged in the two indictments were one and the same offence. The prisoner may have been acquitted a thousand times of offences precisely like the offence charged in this indictment, and yet if none of them was this identical offence, such acquittals would be no bar to a prosecution under this indictment. The plea rests upon two grounds: 1st, that there was a former acquittal of an offence—that is matter of record; and, 2dly, that such offence was the same which is charged in the present indictment. That is matter of fact to be proved. The prosecutor need not take issue on both of these grounds. He may admit the former, and traverse the latter; and that is what in effect he did in this case.
The counsel for the prisoner seem to suppose that the replication should have traversed the allegation in *965 the plea, “that the evidence necessary to convict him on the present indictment, would have convicted him if properly introduced on the previous trial and indictment when he was by the jury acquitted.”
Now certainly such a traverse was not necessary, and would have been very improper. The two indictments being for similar offences, and in the very same words, except as to time, which is immaterial, it follows, as a matter of course, that the same facts which sustain the one, would, standing by themselves, sustain the other. But when it is averred and shown that the two offences, though similar, are not in fact the same, but very different offences, all foundation for the plea is thus completely taken away. Surely it cannot be necessary to cite authority, or say anything more in 'support of this view.
The next questions presented by the bills of exceptions in this case are in regard to instructions asked for by the prisoner and the commonwealth respectively, on the trial of the issue joined on the second plea of autrefois acquit. These instructions are the subjects of bills Nos. 5, 6 and 7, which will be considered together.
5. Bill of exceptions, No. 5, states that the prisoner tendered to the court the following instructions numbered from one to four, which are to the following effect:
1. If the jury believe that the evidence necessary to support a conviction on the present indictment would also have supported a conviction on the previous indictment, then they must find that he has been heretofore acquitted of the same offence.
2. The issue before them is, not whether or not the offences charged in the two indictments are one and *966 the same, hut whether an acquittal under one is an acquittal of the other.
3. On the trial of an indictment for a felony, the day and year are not material; and on the trial of a felony, on an indictment charging an offence to have been committed on the 28th day of July 1874, a prisoner may be legally convicted if the evidence shows that the offence was committed on the 31st day of March 1874.
4. If the jury believe from the evidence before them, that the prisoner was tried and acquitted of burning the dwelling house of Francis G-. Ruffin on the 29th day of July 1874, and that the present indictment charges him with burning the dwelling house of Francis G-. Ruffin on the 31st day of March 1874, then they must find that he has been acquitted of the of-fence charged in the present indictment, unless they believe from the evidence that there was also a dwelling house burned on the 29th day of July 1874, and that he was tried for that burning on his previous trial.
Which instructions the court refused to give, to which ruling the prisoner excepted.
6. Bill of exceptions Ro. 6 states that the commonwealth tendered to the court the following instructions to the jury:
“ That if the jury believe from the evidence that the offence for which the prisoner is now arraigned is another and distinct, and not the same offence for which he has been heretofore tried and acquitted, then they must find against the prisoner upon the issue joined.
“And if they believe from the evidence that' the house named in the first count of the indictment, for the burning of which the prisoner was arraigned and tried at the February term of the court, is not the same house nor the same burning charged in the in *967 dictment upon which he now stands arraigned, then they must find against the prisoner on the issue joined. And it makes no difference that the offences charged in the indictments are described as the burnings of the dwelling house of Francis G-. Ruffin, if the jury believe that in reality distinct houses and distinct burnings are referred to in the two indictments.”
"Which instructions the court gave; to which ruling the prisoner excepted.
7. Bill of exceptions Eo. 7 states that the prisoner tendered to the court the following instruction to the jury:
“ That if they believe that the evidence necessary to support a conviction on the present indictment would also have supported a conviction on the previous trial, then they must find that he has been heretofore acquitted of the same offence.
Which said instruction, as it was tendered, the court refused to give; but gave it with the following addendum made thereto by the court.
“But if the jury, from the evidence, believe that the prisoner, on the former trial, was tried for a separate and distinct offence, occurring at a separate and distinct time, involving a separate and distinct act, then the jury may find for the commonwealth on the issue joined.”
To which ruling of the "court, in refusing to give the said instruction as asked for, and in giving it with the addendum aforesaid, the prisoner excepted.
We think that the circuit court did not err, at least to the prejudice of the prisoner, in regard to the said instructions. Certainly the court did not err in refusing to give the instructions numbered 1 and 2 in bill of exceptions Eo. 5; nor in giving the instructions named in| bill of exceptions Eo. 6; nor, (to the preju *968 dice of the prisoner) in refusing to give the instruction asked for, but giving it with an addition as mentioned in bill of exceptions No. 7. The instructions numbered 3 and 4 in bill of exceptions No. 5, would have been true enough, standing by themselves, and as abstract propositions. But standing as they were, and without any evidence to support them, they would have misled the jury, dr were calculated to do so; and the court was warranted in refusing to give them. No evidence is set out in either of the three bills of exceptions which relate to the instructions. And if we look to the facts certified in a subsequent bill of exceptions, No. 11, we find that there was not a particle of evidence in the case tending to prove that the offences charged in the two indictments were the same; but on the contrary there was ample evidence that they were totally distinct, committed at different times and places, and upon different buildings. Taking all the instructions given by the court to the jury together, the law was thereby correctly and fully laid down on the subject, and if there was any error therein, it was certainly not to the prejudice of the prisoner.
8. Bill of exceptions No. 8, states that on the trial of the issue, on the plea of autrefois acquit, Francis G. Ruffin, a witness for the commonwealth, was asked to “ state whether or not the verdict rendered by the jury sworn for the trial of Hillary Page at the February term of the said circuit court, had relation to the house charged in the indictment upon which he is now arraigned, as having been burnt on the 31st day'of March 1874;” to which question the prisoner objected as illegal. But the court overruled the objection, and permitted the question to be asked and answered: when the witness answered that it did not. To this question and answer the prisoner excepted.
*969 The ground of this exception, as stated in the assignment of error is, that the testimony objected to, is “ simply the opinion of a witness on a question of law and record evidence.”
The only meaning and effect of this evidence was, that the two indictments were for different offences. The witness was the owner of both houses, the burning of which was the subject of the two prosecutions respectively. He was the principal, if not the only witness in regard to the burning in each case. He knew perfectly well that the former trial was for burning his barn and stable on the 29th day of July 1874, and the latter trial was for burning his dwelling house ' on the 31st of March 1874; and he could and did therefore state as a fact, that the verdict rendered at the February term of the court in 1875, 'for burning a "house on the 29th day of July 1874, did not have relation to the house charged in the indictment on which he was then arraigned as having been burnt on the 31st day of March 1874.
9. Bill of exceptions, Ho. 9, seems to have been waived by the prisoner’s counsel.
10. Bill of exceptions, Ho. 10, states that the jury on the trial of the issue on the plea of autrefois acquit, after hearing the evidence, were about retiring to their room to consider of their verdict, when the court gave them, to carry with them to their room, the plea of the prisoner, witb the replication thereto, the instructions of the court in writing, and the indictments Ho. 1 and Ho. 7, but failed to give the jury the written opinion of the court of appeals defining and declaring the legal force and effect of the verdict of the jury, who formerly tried the prisoner on indictment Ho. 1, all of these papers having been offered in evidence and read to the jury. After their retirement the jury returned into *970 c.ourt and rendered their verdict; and the prisoner thereupon moved the court to set aside the verdict, because the jury had been permitted to carry the said indictments, Nos. 1 and 7, with them to their room without taking with them the opinion of the court of appeals aforesaid; which motion the court overruled; and to this ruling of the court the prisoner excepts.
It was no doubt well understood by the jury, and not denied by the commonwealth, that the prisoner was acquitted of. the offence charged in indictment No. 1, and that was all that the opinion of the court of appeals could show in favor of the prisoner. The circuit court, if it had been asked, would have instructed the jury as to the meaning and effect of the said opinion,, and would no doubt have handed it to the jury, to take-into their room with the other papers aforesaid on their retirement, but it was not askéd to do so. And after their return into court with their verdict, it was too late to make the objection, if it ever could have been properly made; and the court did not err in overruling the motion to set aside the verdict on the ground aforesaid.
11. Bill of exceptions, No. 11, states that the jury, having heard the evidence on the issue joined on the plea of autrefois acquit, retired to their room, and after sometime returned into court with their verdict in these words : “We, the jury, find that the said Hillary Page has not been tried and acquitted for the offence charged in the indictment. Thomas Woodfin, Foreman.” Whereupon the prisoner moved the court to-set aside the verdict, because of its being contrary to law and the evidence; which motion the court overruled; and to this ruling of the court the prisoner excepts, and the court certifies the facts proved on the trial of the said issue to be as follows:
*971 Then follows the certificate of facts, including the warrant of arrest dated the 15th, and mittimus dated the 16th, day of February 1875, in which Hillary Page is charged with feloniously burning in the night time, on different days, sundry houses, the property of F. G. Puffin, Sr., in the county of Chesterfield, among which was one barn and stable charged to have been burnt on the 29th of July 1874, and one dwelling house on the 31st of March 1874; also including indictment Ho. 1, and copy of the record of the trial thereon at February term 1875, and of the record of the case in this court, including the opinion of the court in the case as aforesaid. After which follows a certificate in these words:
“And for the commonwealth it was proved by a witness that the two houses described in the two indictments, numbered 1 and 7, were totally distinct houses, situated one mile apart; that the house burned in July was just one mile from the house burned on the 31st of March; that there had not been only one burning, but several; that the house burned on the 29th day of July 1874, was really his barn;” being charged in the first count of indictment Ho. 1 to be his dwelling house, in the second count to be the dwelling of Philip Epps and others, and in the third to be his barn, in which Philip Epps and others named therein usually lodged at night; that the house Hillary Page is charged in the present indictment, Ho. 7, to have burned “on the 31st of March is his mansion house, in which himself and family then resided, and the house burnt on the 29th day of July was his barn, in which some of his laborers usually lodged at night. He had the following fires a3 given in his evidence on the other trial: March 13th 1874, the first fire occurred; it was his son Frank’s house: On the 23rd of March, his, the wit *972 ness’s, stable and carriage house, including three horses; 31st March his dwelling house was set on fire in the night; 26th of April (four weeks lacking one day) same dwelling house was set fire to at the same place; on the 2d of May, Lucy’s house (the mother of the boy,) was set fire to in the night time; on the 8th of May the same house was set fire to; on the 8th of May the smoke house was set fire to; on the 14th of May, Lucy’s house was set fire to in roof in the day time (at 11 o’clock). At that time he commenced guarding the premises at night, and continued to guard the premises, himself and his sons, up to the 12th of January 1875; on the 29th of July the barn, stable and contents were burned; on the 13th of January 1875, a new stable and new carriage, three valuable horses, &c., were burned, between 7J and 8 o’clock at night; they were all at supper at the time. That he had been examined at every trial of Hillary Page, and has never been examined on the charge against Hillary Page for burning his dwelling house on the 31st of March, the offence for which he is now arraigned. Ho one has been examined against him as a witness on that charge. The verdict of the jury on the trial at February term, had no reference to the burning of the house charged in this -indictment. And on cross-examination, this witness proved that at the trial of the prisoner in February, on indictment Ho 1, he gave the same evidence as regards the different fires, that he has given to-day; "that he read the dates and different fires from the report of the evidence on that trial’ as published in the Richmond Dispatch, and that the report of his evidence was correct as given in on that trial. And the court certifies that no other fact was proven on the issue on the prisoner’s plea of autrefois acquit.”
We are clearly of opinion that the circuit court did *973 not err in overruling the motion to set aside the verdict on the issue on the plea of former acquittal. It is perfectly clear from the evidence, that the offence, and the only offence tried, or intended to be tried at the first trial, in February 1875, was the burning of the barn and stable on the 29th day of July 1874. That is the offence, and the only offence described, or intended to be described, in indictment Ho. 1, and in each count thereof, though described in the first count as the dwelling house of F. G-. Ruffin, in the second as the dwelling house of Philip Epps and others, and in the third by its true name, of barn and stable, and as “ an outhouse, not adjoining the dwelling house, nor under the same roof, but some persons usually lodging therein at night,to wit: Philip Epps,” &c. We know very well that in practice but one felony can be charged in one indictment, though it can be charged in different forms, in different counts of the same indictment, which is upon the theory that they are different offences. The pleader supposed, and perhaps correctly, that the house, though a barn and stable, was in law the dwelling house of the owner, Colonel Ruffin, as part of his family, to wit: some of his servants lodged therein at night, or the dwelling house-of Philip Epps and others, as they lodged therein at night; and he also supposed, but in that he was mistaken, that the offence of burning a barn and stable, as described in the third count of the indictment, was a felony punishable with death, as was the offence described in each of the first and second counts of the indictment. The jury being thus misled, found the-prisoner guilty under the third count, which truly described the house in point of fact, saying nothing in their verdict about the first and second count; and thus the prisoner was, by construction of law, acquit *974 ted under the first and second counts. And this constructive acquittal of an offence, of which the prisoner was in fact convicted under the third count, he has endeavored to convert into an actual acquittal of another and totally distinct felony, committed at a different time and place. We cannot read the facts certified in bill of exceptions No. 11, without seeing plainly that the only offence intended to be charged in indictment No. 1, and tried in February 1875, was the burning of the barn and stable; and no body better understood that fact than the prisoner himself. In the warrants of arrest and commitment, which bear date on the 15th and 16th of February 1875, just before the first trial, which was had in the same month, the most important of the different burnings of the property of Colonel Ruffin, charged to have been perpetrated at different times by the prisoner, were enumerated and described, one of them being described as the burning of “one barn and stable on the 29th July 1874,” and another being described as the burning of a dwelling house on the 31st of March 1874. At the February term of the circuit court, which seems to have been in session at the date of the warrant of commitment, indictment No. 1 was found against the prisoner for the offence charged to have been committed on the 29th of July 1874. There was no indictment then found for any of the other offences charged to have been committed by the same offender on other days named in the warrants. At subsequent terms of the court other indictments were found for other offences named in the warrants, and among them the indictment in this case, No. 7, for burning the dwelling house of Colonel Ruffin on the 31st of March 1874. It is true, as said by the counsel for the prisoner, that a mistake in the day, in the description of an offence in an indictment, is *975 •immaterial; but here there was no mistake. The different offences were in fact committed on the different days named in the warrants, and were truly described by those dates in the different indictments. We have said so much on this branch of the case, because it seems to be the most important; but we will now leave it.
12. Bill of exceptions, No. 12, states that a venire of thirty-six persons having been summoned from the city of Petersburg, the prisoner by his counsel moved the court to quash the venire facias, by and on which the said jury were summoned, for errors apparent on the face of said writ, and because there is no authority for summoning such jury at this time; which motion the court overruled;” and the prisoner excepted.
The writ is not embodied in the bill of exceptions, nor elsewhere in the record, and we cannot therefore see whether there be any errors apparent on the face of it. None are pointed-out by the prisoner, unless it be by the ninth assignment of errors, which is that “ the court erred' in sending out of the county for jurors to try his plea of autrefois acquit, there being no provision for such action. The common law provides, that the plea may be tried by the jury summoned to try the general issue, or by a jury made up of bystanders.”
The Code, chapter 202, section 10, provides, that “ in a criminal case in a circuit court, if qualified jurors, not exempt from serving, cannot conveniently be found in the county or corporation in which the trial is to be, the court may cause so many as may be necessary of such jurors to be summoned from any other county or corporation by the sheriff or sergeant thereof, or by its own officer.”
We are of opinion that the venire facias in question was issued by authority of the provision just quoted *976 from the Code. That provision does not discriminate between jurors for the trial of the general issue and jurors for the trial of an issue or special plea, and there seems to be the same necessity or propriety for sending out of the county for jurors in the one case as the other. The letter and the spirit of the law therefore equally apply to both. The same jury, we are told, may try both issues, though not at the same time. The right to send out of the county for a jury to try one, seems to involve a right to send out for a jury to try the other, in the absence of anything in the law to the contrary. The law gives to the court of trial a very large discretion in this matter, mainly, if not entirely, for the protection and security of the prisoner. “If qualified jurors, not exempt from serving, cannot be conveniently found in the county,” &c., is the language of the law which prescribes the condition on which this authority is to be exercised. But who is to judge in this matter? Of course, the court of trial, which knows all the circumstances of each case before it, and knows what convenience requires in regard to sending out of the county for jurors. This court will presume that the circuit court acted rightly in any such matter, unless the contrary plainly appears; as it certainly does not in this ease. Looking to the extraordinary number of similar felonies charged about the same time, against the prisoner, it is not strange or unreasonable that the circuit court should have considered it proper to send out of the county for jurors to try him, or any issue in his cause.
18. Bill of exceptions Ho. 13 states that the prisoner challenged the whole array of thirty-six jurors summoned from Petersburg for the trial of the issue on his special plea, because he says there appears no evidence in this case, except the opinion of the judge, to show *977 that a jury cannot be conveniently found in the county of Chesterfield, and because the law does not authorize such jury from another county wherein he indicted for the trial of this issue; but the court overruled the challenge and the prisoner excepted.
We think there was no error in this ruling of the court, for reasons assigned in regard to the thirteenth bill of exceptions.
14. Bill of exceptions Eo. 14 states that the prisoner being on his trial (on the plea of not guilty), the following named jurors (eight in number, whose names are given in the bill) were called and examined on their voir dire, when they stated that they had tried the last issue joined between the prisoner and the commonwealth (being the issue on the plea of former acquittal), and that during that trial, they had heard Mr. Ruffin in his testimony, while speaking of the burning of the house, say that the prisoner had confessed, hut that as he used the last word he was interrupted and told to say nothing about the confession; but that they believed they could give him a fair and impartial trial on the evidence, notwithstanding anything they had heard, having no impression on their minds as to the question of the guilt or innocence of the prisoner which it would require evidence to remove. Whereupon the prisoner challenged the said'jurors as being incompetent, and moved the court to exclude them; but the court overruled the motion; and the prisoner excepted.
We are of opinion that the said jurors were not incompetent, and therefore the court did not err in overruling the said motion.
15. Bill of exceptions Eo. 15, which is the last in the case, states “that on the trial of the cause, the commonwealth called as a witness one O. H. Flour *978 noy, who testified that he was the sheriff of the county of Chesterfield; that one day during the previous trial of the prisoner he went to prisoner and asked him, ‘ Where did you get the rope used in the burning of Mr. Euffin’s house?’ That the prisoner made a statement to him then about the rope; that the next day being the day of his sentence, and after his sentence, while he was on his- way to jail with prisoner, the prisoner called him and said that ‘he wanted to tell him that the statement he had made the day before about the rope was false, and he wanted to tell him all about it; and he then proceeded to make another statement to him.’ On cross-examination Mr. Flournoy said, ‘ that he had heard of another confession, said to have been made by the prisoner before he asked him about the rope; he had heard such a confession testified to in court by a Mr. Wren and Mr. Lampson, and others.’ He was then asked by the commonwealth to state the admissions made to him by the prisoner; to which the prisoner by counsel objected, because they were obtained illegally and improperly, and because the commonwealth has not yet shown that the first or former confession of prisoner was legally and properly obtained. The .commonwealth then called Mr. John Wren, who testified that when he obtained a confession from the prisoner, he was a suspended policeman, but drawing his pay as a policeman, and acting as a private detective; that he had a colored boy following the prisoner about for two weeks, who brought him to a detective’s office, up stairs, corner Main and Eleventh streets; that he told him, the prisoner, that he and his partner were commission merchants, and had a house they wanted burnt, for which they would give $150; that he agreed to do it; that he told him this was a job that required *979 secrecy, and no blab-mouth would do for it; that the prisoner then told him that he need have no fear of him, for he had burned twelve or thirteen houses on -one farm; that he then told him to tell Mr. Lampson, his partner, all about it, which he did; that he offered him no inducement or reward; that he was not dressed in police clothes, nor had on any badge or insignia of office; the prisoner had no acquaintance with me, and did not know me. Mr. Lampson stated that at the time of the confession made to Mr. Wren he held no office whatever; that he went to Mr. Wren’s office; when he went in he heard Mr. Wren say nothing about being a partner of his, but Wren said to the prisoner, ‘I want you to tell this gentleman all about those burnings or fires;’ knew nothing about money being offered to the prisoner. And thereupon the pi’isoner moved the court to exclude the admissions made to Flournoy; but the court overruled the motion, and permitted the admissions to Mr. Flournoy to be given as evidence to the jury; and to this opinion and ruling •of the court the prisoner excepted.”
We think there is no error in this opinion and ruling of the circuit court. The evidence of Flournoy, which was excluded, is not set out in the bill of exceptions, and we do not therefore know what it was, or whether it related to any confession by the prisoner of the offence with which he was charged, much less any inducement held out to the prisoner to make such a confession. We suppose the ground of the objection was, that the admissions made to Flournoy had some ■connection with the confession made to Wren and Lampson, referred to and set out in whole or in part in the bill of exceptions. It does not appear what interval of time there was between the said confession and the admissions made to. Flournoy, or whether there *980 was any connection between them, or any such connection as to make the admissions liable to any objection which might have been made to the confession as evidence against the prisoner. But conceding that there was such a connection between them, and that if the confession was inadmissible, so also were the admissions, then was the confession, as proved by Wren and Lampson, inadmissible?
There is perhaps no branch of the law of evidence which has given rise to more controversy than that concerning the admissibility of confessions of a person charged with a criminal offence as evidence against him on such charge. The eases on this subject are collected in 2 Russell on Crimes, chapter the 4th, page 824; and Roscoe’s Criminal Evidence, title Confessions, pp. 37-50. But it will not be necessary to comment upon or state any of these cases, since the law, as it now stands, is laid down in two cases lately decided by this court, viz: Smith v. The Commonwealth, 10 Gratt. 734; and Shifflet v. The Commonwealth, 14 Id. 652, 658. In the former case the court came to the following conclusion: “ The rule that may be fairly deduced from authoritative decisions upon the subject is, that a confession may be given in evidence, unless it appear that it was obtained from the party by some inducement of a worldly or temporal character, in the nature of a threat or promise of benefit, held out to him in respect of his escape from the consequences of the offence or the mitigation of the punishment by a person in authority, or with the apparent sanction of such a person.” The same conclusion was reaffirmed in the latter of the said two cases, in an opinion in which the whole court of five judges concurred. We may therefore regard it as well settled law in this state.
Applying that conclusion of law to the case, there *981 •cannot be a doubt as to the admissibility of the admis•sions and confession in question, whatever may have been the weight of the evidence, which is another •question, and of which the jury were to judge. Certainly whatever promise of benefit, if any, was held out to the prisoner to obtain the confession in this case, it was not “ held out to him in respect of his escape from the consequences of the offence or the mitigation of the punishment by a person in authority, or with the apparent sanction of such a person.
We have now considered and disposed of all the questions arising in this case, and are of opinion that there is no error in the judgment, and that it must be affirmed. And this disposes of the case of indictment Ho. 7. The other case, indictment Ho. 5, will not be •disposed of for the present.
Judgment arrirmed.